**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beadcrete USA Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>Beadcrete Pty Limited,<br><br>    Defendant. | No. CV-19-04916-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff Beadcrete USA Inc.'s ("BUSA") and Third-Party Defendants ("TPDs") BCI LLC, Superior Pool Plastering Inc., Superior Pool Plastering LLC, Superior Pool Management Inc., Robert C. Altamirano, Barbara Altamirano, and Taylor Stutzman's Motion for Partial Summary Judgment on Claim for Declaratory Relief (Doc. 44, BUSA MSJ), accompanied by a Statement of Facts (Docs. 45–46, BUSA SOF), to which Defendant Beadcrete Pty Limited ("BPL") filed a Response (Doc. 51, BPL Resp.) and Controverting Statement of Facts (Doc. 52, BPL CSOF), and BUSA/TPDs filed a Reply (Doc. 54, BUSA Reply). Also at issue is BPL's Motion for Summary Judgment (Doc. 47, BPL MSJ) accompanied by a Statement of Facts (Doc. 48, BPL SOF), to which BUSA/TPDs filed a Response (Doc. 49, BUSA Resp.) and Controverting Statement of Facts (Doc. 50, BUSA CSOF), and BPL filed a Reply (Doc. 53, BPL Reply). The Court resolves these Motions without oral argument. *See* LRCiv 7.2(f).

. . . .

. . . .

## I. BACKGROUND

Defendant and Third-Party Plaintiff BPL, an Australian company, is the owner of patents related to aggregate material composed of glass beads and similar materials, which is used for swimming pool finishes, and BPL holds registered patents in many nations, including the United States. BPL also owns certain trademarks related to the manufacture, distribution and sale of its products, including the registered trademark BEADCRETE. Beginning in 2001, BPL licensed certain registered patents and trademarks to Plaintiff BUSA, an Arizona company owned by siblings and TPDs Robert and Barbara Altamirano, in exchange for royalty payments by way of a License Agreement and its amendments. BPL alleges that, in 2014, BUSA breached the License Agreement by refusing to pay royalties.

The License Agreement directs the parties to resolve disputes first by mediation and then, if unsuccessful, arbitration, as follows:

> Any dispute regarding this Agreement will be heard by experienced arbitrators in Phoenix, Arizona USA. Arbitration shall be conducted according to the rules of the American Arbitration Association [("AAA")], by a panel of three arbitrators, of which one shall have been nominated by each Party hereto, subject to strike for any reason by the other Party, and the third shall have been jointly agreed upon by the two arbitrators nominated by the Parties. The arbitrators shall have the discretion to award reasonable attorneys' and experts' fees and costs to the prevailing Party.

(BPL SOF ¶ 18; Doc. 11-2 at 44.)

The parties entered into private mediation on February 24, 2015, which failed to resolve their initial dispute under the License Agreement. On March 11, 2015, BPL delivered written notice to BUSA of termination of the licenses and a demand that BUSA assign the United States Patent and Trademark Office ("USPTO") registration of its BEADCRETE trademark to BPL. BPL's notice also informed BUSA that it would initiate arbitration under the License Agreement.

BUSA then filed suit in this District, claiming ownership of the trademark registration and disputing BPL's ownership of the same. On May 11, 2016, District Judge

Roslyn Silver granted BPL's Motion to Dismiss that action, because the License Agreement compelled the parties to arbitrate their dispute. (Case No. CV-15-01505-PHX-ROS, Doc. 15.) On June 8, 2016, BUSA appealed Judge Silver's judgment compelling arbitration to the Ninth Circuit. (Case No. CV-15-01505-PHX-ROS, Doc. 16; 9th Cir. Case No. 16-16036.)

On August 1, 2016, concurrent with filing a notice of appeal, BUSA transferred its assets and purported intellectual property rights to BCI, an Arizona limited liability company owned by Robert Altamirano and his daughter, TPD Taylor Stutzman. BUSA provided no notice to BPL or the Ninth Circuit of this transfer. On September 9, 2016, BUSA filed a Surrender of Registration with the USPTO for cancellation of its purported rights in the trademark. The same day, BCI filed an application with the Trademark Trial and Appeal Board ("TTAB") to transfer the trademark registration from BUSA to BCI. Nine months later, when BPL learned of BUSA's actions, BPL filed a petition with the TTAB to oppose BCI's trademark application ("opposition action") on June 2, 2017. The TTAB initially stayed that action pending the Ninth Circuit's resolution of the appeal.

On July 17, 2018, two years after it filed the Notice of Appeal in the Ninth Circuit, BUSA filed a motion for voluntary dismissal of the appeal. (Case No. CV-15-01505-PHX-ROS, Doc. 19; 9th Cir. Case No. 16-16036.) As noted above, two years earlier, BUSA had transferred any rights it had in the trademark at issue in the appeal to BCI.

In the TTAB opposition action, BCI and BPL then litigated the TTAB's subject matter jurisdiction over the dispute for the next eight months. On March 21, 2019, the TTAB directed BCI and BPL to arbitrate their trademark dispute and suspended the opposition action until the arbitration concluded. The TTAB ordered the parties to provide notice that they initiated arbitration by July 19, 2019.

On July 15, 2019, BPL's counsel sent an email to counsel for BUSA/BCI nominating Shawn Aiken as arbitrator. On July 18, 2019, BUSA/BCI objected to BPL's nominee, demanded a new nominee, and represented, "Thereafter, we will provide the name of our nominated arbitrator." (BPL SOF ¶ 31.) On July 19, 2019, BPL delivered a

- 3 -

"Demand for Arbitration" to counsel for BUSA/BCI. Concurrently, BPL notified the TTAB of the Demand for Arbitration and moved for continued suspension of the opposition action until the arbitration was complete.

On August 8, 2019, without notifying BPL in advance that it opposed arbitration, BCI moved the TTAB to dismiss the opposition action on the basis that BPL did not properly commence arbitration, which motion the TTAB denied.[1] On the same day, BUSA filed the present lawsuit seeking a declaration from this Court that the Demand for Arbitration that BPL served on BUSA/BCI has a number of defects under the parties' License Agreement, including that the Demand for Arbitration does not indicate it was filed with the AAA, that the administrative filing fee was paid to the AAA, or that the License Agreement and Judge Silver's Order were provided to the AAA. BUSA also complains that BPL added a number of respondents to its Demand for Arbitration who are not parties to the License Agreement—all of which respondents are now TPDs in this case. Further, BUSA claims these defects in the Demand for Arbitration constitute a breach of the License Agreement.

In response, BPL filed an Answer, Counterclaim, and Third-Party Complaint. Based on the facts set forth above, BPL claims that, in 2016, while BUSA's appeal was pending at the Ninth Circuit, BUSA's conveyance of all its assets, including its purported interest in the trademark BEADCRETE, to its affiliate, BCI, was done without informing BPL or the Ninth Circuit as a calculated effort on the part of BUSA to avoid BPL's claim to the trademark and to allow for the surreptitious cancellation of the trademark registration at the USPTO and a new trademark application for the BEADCRETE mark by BCI. BPL also claims that TPDs BCI—owned by Robert Altamirano and Taylor Stutzman—and the Superior Pool companies—owned by Robert and Barbara Altamirano—are corporate fictions and that BUSA and the TPDs are alter egos and business conduits of each other.

---

[1] The TTAB also denied BCI's renewed motion to dismiss the opposition action on January 7, 2020.

1 Further, BPL claims that, in support of BCI's trademark application to the USPTO, TPD
2 Robert Altamirano made numerous misrepresentations to the USPTO, including that BCI
3 has used the mark since 2000—which was 14 years before BCI's formation—and that BPL
4 does not have superior and exclusive rights to the mark. BPL seeks a declaration of the
5 arbitration requirements under the License Agreement; that BPL properly demanded
6 arbitration under the Agreement; that BPL did not waive arbitration; that the TPDs are
7 proper parties to the arbitration as agents and alter egos of each other and BUSA; that the
8 Court appoint an arbitration panel; and that the Court compel arbitration.
9 The parties now cross-move for summary judgment.
10 **II.    ANALYSIS**
11 To resolve a motion to compel arbitration under the Federal Arbitration Act
12 ("FAA"), 9 U.S.C. § 1 *et seq.*, a district court must resolve two gateway issues: (1) whether
13 the parties entered into a valid agreement to arbitrate, and (2) whether the arbitration
14 agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Services,*
15 *Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Where the arbitration agreement is a part of a
16 more extensive contract between the parties, "the sole question is whether the arbitration
17 clause at issue is valid and enforceable under § 2 of the [FAA]," and "federal courts may
18 not address the validity or enforceability of the contract as a whole." *Ticknor v. Choice*
19 *Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). The FAA "mandates that federal courts
20 rigorously enforce agreements to arbitrate." *Coup v. Scottsdale Plaza Resort, LLC*, 823
21 F. Supp. 2d 931, 940 (D. Ariz. 2011) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S.
22 213, 221 (1985)). "By its terms, the [FAA] leaves no place for the exercise of discretion
23 by a district court, but instead mandates that district courts *shall* direct the parties to
24 arbitration on issues as to which an arbitration agreement has been signed." *Id.* (internal
25 quotation and citations omitted). "In construing the terms of an arbitration agreement, the
26 district court applies general state-law principles of contract interpretation, while giving
27 due regard to federal policy in favor of arbitration by resolving ambiguities as to the scope
28

of arbitration in favor of arbitration." *Id.* (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

Under Arizona law, contract interpretation begins with the proposition that, where a contract's language is "clear and unambiguous, it must be given effect as it is written." *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977). The mere fact that parties disagree about the meaning of a contract does not make it ambiguous. *J.D. Land Co. v. Killian*, 762 P.2d 124, 212 (Ariz. Ct. App. 1988). When interpreting a contract, "it is presumed that the parties intended to give the words employed their ordinary meaning." *Tucker v. Byler*, 558 P.2d 732, 735 (Ariz. Ct. App. 1976).

### A.    The Arbitration Agreement and BPL's Demand for Arbitration

Seven years have passed since the dispute between BPL and BUSA arose triggering arbitration under the License Agreement. In that time, Judge Silver ordered arbitration between BPL and BUSA in a prior action in 2016, and the TTAB likewise ordered arbitration in 2019, albeit between BPL and BCI, which alleges it stepped into BUSA's shoes for the purposes of BEADCRETE trademark rights. Notwithstanding the passage of many years and two orders to arbitrate, in this lawsuit, BUSA/BCI again resist arbitration, now claiming that BPL's 2019 Demand for Arbitration did not comply with the terms set forth in the License Agreement. Specifically, BUSA/BCI argue that the License Agreement requires that any arbitration will be administered by the AAA and does not contemplate a private or *ad hoc* arbitration, as BPL proposed in its Demand for Arbitration.

Resolution of the parties' dispute as to the type of arbitration provided for in the License Agreement turns not only on the language of the License Agreement but also on the AAA Rules. The plain language of the License Agreement provides that the AAA Rules will apply to an arbitration between BPL and BUSA, but it does not require that arbitration be administered by the AAA; rather, it simply requires a panel of "experienced arbitrators in Phoenix, Arizona." (BPL SOF ¶ 18; Doc. 11-2 at 44.) In the absence of additional language, no intent on behalf the parties to have the arbitration administered by the AAA can be inferred from the language of the License Agreement itself.

BUSA/BCI argue that arbitration under the AAA Rules necessarily requires an arbitration administered by the AAA. Specifically, BUSA/BCI point to AAA Rule R-2, which provides:

> When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. *The authority and duties of the AAA are prescribed in the agreement of the parties* and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may in its discretion, assign the administration of an arbitration to any of its offices. *Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.*

(Doc. 46, AAA Commercial Arbitration Rules and Mediation Procedures, Rule R-2 (emphasis added).)

BUSA/BCI focus in particular on the last provision of Rule R-2, that "[a]rbitrations under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so." But the thrust of Rule R-2 is not that parties are required to participate in an arbitration administered by the AAA, but rather that the "authority and duties of the AAA are prescribed in the agreement of the parties" as well as the AAA Rules. To the extent that the last provision of Rule R-2 can be interpreted as requiring that all arbitrations following the AAA Rules must be administered by the AAA, as BUSA/BCI argue, Rule R-1(a) provides that "[t]he parties, by written agreement, may vary the procedures set forth in these rules." Indeed, this is consistent with the provision in Rule R-2 that the parties set forth the authority and duties of the AAA in their agreement.[2]

The parties cite no case law interpreting AAA Rule R-2, but the Court's research uncovered a good deal of authority from outside this Circuit. In *Prostyokov v. Masco Corporation*, the Seventh Circuit examined whether an arbitrator exceeded his powers in

---

[2] Interpreting the AAA Rules as BUSA/BCI urge would mean that all AAA-Rule-based arbitrations would be administered by the AAA. But BPL represents, and the case law demonstrates, that there are "countless *ad hoc* arbitrations applying AAA Rules." (BPL MSJ at 11.)

- 7 -

Case 2:19-cv-04916-JJT   Document 56   Filed 02/28/22   Page 8 of 15

formulating an arbitration award. 513 F.3d 716, 723–24 (7th Cir. 2008). That case presented somewhat the contrary of the issue in this case—that is, whether an agreement that provided for a private arbitration under the AAA Rules properly involved the participation of an AAA-affiliated arbitrator. *Id.* The court concluded that just because the parties' agreement specified a private arbitration under the AAA Rules did not mean that an AAA-affiliated arbitrator could not participate, and indeed Rule R-2 specifies that when parties agree to arbitrate under the AAA Rules, they *authorize* AAA administration. *Id.* at 724. But, while authorized, AAA administration is not *required* for an AAA-Rule-based arbitration. *Prostyakov* demonstrates one of the many instances in which a private arbitration is held under the AAA Rules. *See also Taboada A. v. AmFirst Ins. Co.*, 2019 WL 3604613, at *5 (S.D. Miss. Aug. 6, 2019) ("Most courts considering the issue also hold that Rule R-2 of the AAA's Commercial Arbitration Rules merely 'authorizes' the AAA to administer the arbitration and does not require administration exclusively *by the AAA*."); *Meskill v. GGNSC Stillwater Greeley LLC*, 862 F. Supp. 2d 966, 973 (D. Minn. 2012) (concluding the arbitration agreement "selected only the [AAA Rules] to be applied in the event of an arbitration, not the arbitral forum that would conduct the arbitration" (internal quotations and citation omitted)); *Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 735 (S.C. 2014) ("Further, had the parties truly intended that the AAA serve as the exclusive arbitral forum, they could have easily said so, with 'no need for them to do so obliquely by specifying that the arbitration must be conducted' in accordance with the AAA's rules." (quoting *Meskill*, 862 F. Supp. 2d at 973)).

Here, the License Agreement only provides that "arbitration shall be conducted according to the rules of the American Arbitration Association," but makes no mention of AAA administration—and indeed specifies only that the arbitration is to be administered by a panel of three experienced arbitrators. AAA Rule R-2 does not preempt the parties' agreement for a private arbitration, as BUSA/BCI argue, but instead explicitly permits the parties to prescribe or limit the authority of the AAA. Moreover, Rule R-1(a) permits the parties to enter into an agreement to vary the procedures set forth in the AAA Rules as

desired. According to the terms of the License Agreement, which the Court must enforce, the parties agreed to a private arbitration conducted under the AAA Rules. As a result, the Court finds no fault with BPL's Demand for Arbitration, which suggested as much, or with BPL's "failure" to file the Demand for Arbitration with the AAA or pay the AAA filing fee; such actions would only be required in an AAA-administered arbitration.

### B.     Waiver

BUSA/BCI also argue that BPL waived its right to arbitration by failing to send to BUSA a Demand for Arbitration while BUSA's appeal opposing Judge Silver's decision compelling arbitration was pending in the Ninth Circuit or while BCI and BPL were litigating BCI's trademark claim before the TTAB. "Waiver of a contractual right to arbitration is not favored," and a party seeking to demonstrate waiver must show "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

None of the acts BUSA/BCI identify were inconsistent with BPL's right to arbitrate the parties' dispute under the License Agreement. Indeed, to the extent there were acts disruptive to the arbitration of the parties' dispute, they were acts of BUSA/BCI. It was BUSA that appealed Judge Silver's order compelling arbitration, and BPL was compelled to oppose the appeal. Moreover, it was BUSA that surreptitiously transferred its purported rights in the BEADCRETE trademark to BCI and initiated registration proceedings at the USPTO and TTAB; BPL was again compelled to oppose BCI's application. BUSA/BCI cannot now benefit from their own actions seeking to avoid arbitration and the ultimate resolution of the parties' dispute by way of an application of the waiver doctrine against BPL.

### C.     Third Party Defendants

In its Motion for Summary Judgment, BPL also requests that the Court compel the TPDs—BCI, the Superior Pool companies, Robert and Barbara Altamirano, and Taylor Stutzman—to arbitrate the BEADCRETE trademark dispute under the terms of the License

Agreement between BPL and BUSA. Aside from opposing arbitration generally, BUSA and the TPDs oppose BPL's effort to bring the TPDs into arbitration because they were not signatories to the License Agreement.

To begin with, the Court, not the arbitrators, must determine whether BPL and the TPDs shall arbitrate the BEADCRETE trademark dispute under the License Agreement. In a contract, the parties can agree to delegate to an arbitrator any question as to the enforceability of an arbitration agreement, and thus the question of arbitrability itself can be arbitrated. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.") As a matter of contract law, delegation of arbitrability to an arbitrator must be clear and unmistakable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011). The Ninth Circuit has explicitly held that "incorporation of the AAA rules [in an arbitration agreement] constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). This is in part because the AAA rules include a provision that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.*

But the question here—whether nonsignatories to the arbitration agreement can be compelled to arbitrate—concerns not just the gateway questions of whether there is an arbitration agreement between the parties and the agreement covers the underlying controversy, but whether the nonsignatories can be considered parties to the arbitration agreement at all. Because this question is more than one of arbitrability, the Court must resolve it, not the arbitrators. *See Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1076 (C.D. Cal. 2007); *cf. Shivkov v. Artex Sols., Inc.*, 974 F.3d 1051, 1066–67 (9th

- 10 -

Cir. 2020) (concluding the court, not the arbitrators, are to determine availability of class arbitration where it is uncertain if class members are parties to arbitration agreements).

The parties agree that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187–88 (9th Cir. 1986). "Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; 5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Although state law "determines questions concerning the validity, revocability, or enforceability of contracts generally," the question of whether a nonsignatory is bound by an arbitration agreement is resolved under the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 416–17 & n.4 (4th Cir. 2000) (internal quotations omitted).

With regard to arguments for or against the application of the specific contract and agency principles leading to the conclusion that the TPDs are or are not compelled to arbitrate under the License Agreement, BPL contends the evidence is sufficient for all five principles to apply, and BUSA summarily argues that none of the principles apply. The Court will examine certain principles applied to the individual TPDs in turn.

Under principles of equitable estoppel, BCI is a proper party to arbitration under the License Agreement. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer*, 436 F.3d at 1101 (internal quotations omitted). Nonsignatories can be "held to arbitration clauses where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* (internal quotations omitted). Here, as BPL points out, it is undisputed that BCI claimed to the TTAB that it is the successor-in-interest to BUSA's rights in the BEADCRETE mark—which rights arose from the License Agreement—and even claimed to the TTAB the right to arbitrate its alleged trademark rights under the License Agreement. BCI, as BUSA's successor, cannot simultaneously seek rights arising from the License Agreement and now try to avoid the

obligation to arbitrate that the License Agreement imposes.[3] Accordingly, the Court will compel BCI to arbitrate the BEADCRETE trademark dispute with BPL and BUSA under the License Agreement. *See Int'l Paper Co.*, 206 F.3d at 418; *Petersen v. EMC Telecom Corp.*, 2010 WL 2490002, at *5 (D. Ariz. June 16, 2010). Considering that BUSA already constructively evaded Judge Silver's Order compelling arbitration by transferring its purported trademark rights to BCI, the Court also declares that any other assignees of BUSA/BCI's trademark rights—present or future—will be compelled to arbitrate rights in the BEADCRETE trademark with BPL under the License Agreement.

As for the TPD Superior Pool companies, it is undisputed that Superior Pool Plastering, Inc., and Superior Pool Plastering, LLC are defunct as of 1996 and 2016, respectively. (*E.g.*, BPL SOF ¶ 11.) The Court will not compel to arbitration parties that no longer exist. BPL does provide evidence that BUSA was doing business as Superior Pool Plastering, and using the BEADCRETE trademark, at some point in the last decade or so. (Doc. 11-1 at 2–6.) But the evidence does not tie the remaining company, Superior Pool Management, Inc., to "Superior Pool Plastering" or the use of the BEADCRETE trademark. The Court cannot assume, without more, that Superior Pool Management, Inc. is an agent of BUSA, or that they were alter egos of one another, such that Superior Pool Management should be compelled to arbitrate under the License Agreement. Thus, the Court will deny BPL's motion as it pertains to the Superior Pool companies.

Robert Altamirano owns BUSA together with his sister, Barbara Altamirano, and he owns BCI together with his daughter, Taylor Stutzman. BPL first argues that these individuals should be compelled to arbitrate under the principles of alter ego and piercing the corporate veil. In support, BPL relies on the facts that these individuals own and control the entities and share the same counsel and address with the entities. BPL also argues that BUSA is undercapitalized and that these individuals aided the alleged fraudulent transfer of BUSA's assets to BCI to continue to benefit from the use of the BEADCRETE trademark. Beyond BPL's allegations, the evidence supporting these principles is lacking.

---

[3] Indeed, arbitration under the License Agreement is both a benefit BCI sought before the TTAB, and now a burden BCI is trying to avoid before this Court.

BPL has not produced sufficient evidence of undercapitalization, intermingling of funds between the entities and the individuals, or other undisputed evidence sufficiently probative for the Court to find that the corporate veil has been pierced.[4]

BPL also argues that its trademark claims implicate the individual TPDs because "company officers and directors may be personally liable for torts—including trademark infringement—they authorized, directed, or contributed to." (BPL Reply at 6.) But whether the individual TPDs may be liable in tort is a different question than whether the individual TPDs, as nonsignatories to the arbitration agreement, are bound by the agreement under contract and agency principles. Individual tort liability, even if found, does not by itself bind the individual TPDs to the arbitration agreement to which they are not individual signatories. For these reasons, the Court will deny BPL's request for an order compelling the individual TPDs to arbitrate.

### D.  Appointment of Arbitration Panel

Under 28 U.S.C. § 2202 and A.R.S. § 12-1503, BPL next asks the Court to choose "an arbitration panel of three qualified arbitrators with significant experience adjudicating/arbitrating contract and intellectual property disputes to administer and decide the claims alleged under the Demand for Arbitration." (BPL MSJ at 15.) BUSA/BCI make no argument in response.

As part of the Declaratory Judgment Act, 28 U.S.C. § 2202 states that the court may grant "[f]urther and proper relief based on a declaratory judgment . . . after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." The Arizona statute—to the extent it applies in this instance—states:

---

[4] To the extent BPL argues—albeit obliquely—that the other contract and agency principles apply to the individual TPDs, they are equally unavailing in view of the evidence BPL has proffered. The Court notes that the principles of agency only apply when "a signatory has brought claims against non-signatory agents and the agents then seek to invoke the arbitration clause against the signatory"—the contrary of the present case. *Petersen*, 2010 WL 2490002, at *4 (internal quotations omitted). This stems from the basic principle of contract law that "an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract." *Id.* (internal quotations omitted).

>If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, . . . the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

A.R.S. § 12-1503.

Considering that the parties have only informed the Court that they disagreed as to the method of arbitration—that is, whether arbitration is to be administered by the AAA or privately—but not their ability to select or agree on arbitrators under the License Agreement, the Court will give the parties the opportunity to select arbitrators and commence arbitration under the terms of the License Agreement. Should they fail, a party may move the Court for selection of arbitrators or other relief supported by the law.

### E.     Attorneys' Fees

BPL asks the Court to award it attorneys' fees and costs under ¶ 13.2 of the License Agreement and A.R.S. § 12-349(A). (BPL MSJ at 15.) Paragraph 13.2 of the License Agreement provides that "[t]he *arbitrators* shall have the discretion to award reasonable attorneys' fees and experts' fees and costs to the prevailing Party." (BPL SOF ¶ 18; Doc. 11-2 at 44 (emphasis added).) To the extent BPL is entitled to seek an order from the Court for attorneys' fees and costs beyond those accounted for in the License Agreement, BPL may file an application for attorneys' fees under the applicable Federal Rules of Civil Procedure and Local Rules.

### F.     Stay

Under § 3 of the FAA, "the Court is required to stay proceedings pending arbitration if the Court determines that the issues involved are referable to arbitration under a written arbitration agreement." *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1211 (D. Ariz. 2007); *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (stating the FAA requires courts to stay litigation of claims subject to arbitration pending the outcome of the arbitration of those claims under the terms of the arbitration agreement). In its discretion, the Court will stay this action pending the results of the arbitration.

**IT IS THEREFORE ORDERED** denying Plaintiff Beadcrete USA Inc.'s and Third-Party Defendants BCI LLC, Superior Pool Plastering Inc., Superior Pool Plastering LLC, Superior Pool Management Inc., Robert C. Altamirano, Barbara Altamirano, and Taylor Stutzman's Motion for Partial Summary Judgment on Claim for Declaratory Relief (Doc. 44).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant Beadcrete Pty Limited's Motion for Summary Judgment (Doc. 47).

**IT IS FURTHER ORDERED** compelling Beadcrete USA Inc. (BUSA), BCI LLC, and Beadcrete Pty Limited (BPL) to complete arbitration under BPL's Demand for Arbitration as soon as is practicable, and in any event within eight months of the date of this Order. Pursuant to the terms of the License Agreement, the arbitration will be a private arbitration conducted by three experienced arbitrators in Phoenix, Arizona, under the rules of the American Arbitration Association (AAA), and not an institutional arbitration administered by the AAA. The Court also declares that any other assignees of BUSA/BCI's purported trademark rights—present or future—will be compelled to arbitrate rights in the BEADCRETE trademark with BPL under the License Agreement.

**IT IS FURTHER ORDERED** denying BPL's request for the Court to appoint the arbitration panel, with leave to refile if necessary. The parties to arbitration—BPL on one side and BUSA/BCI on the other—shall agree on the panel of three qualified arbitrators under the terms of the License Agreement within 14 days of the date of this Order.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report eight months from the date of this Order or within one week of an arbitration award, whichever is sooner.

**IT IS FURTHER ORDERED** staying this action pending the results of the parties' arbitration.

Dated this 25th day of February, 2022.

Honorable John J. Tuchi
United States District Judge